Robert R. KING and Bette B. King,
Plaintiffs,

v.

UNITED STATES of America,
Defendant.

No. Civ. 72-0-413.

United States District Court,
D. Nebraska.

March 13, 1974.

Robert R. Veach of Fraser, Stryker, Marshall & Veach, Omaha, for plaintiffs.

Yale Fredric Goldberg, Trial Atty. Tax Division, Dept. of Justice, Washington, D. C., and Paul W. Madgett, Asst. U. S. Atty., D.Neb., for defendant.

RICHARD E. ROBINSON, Senior District Judge.

This matter comes before the Court, having been tried to the Court without a jury. This Memorandum shall constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

The parties filed a stipulation of facts and oral arguments were heard. The parties offered no evidence other than the stipulation of facts.

The Court has jurisdiction pursuant to Title 28 U.S.C.A. § 1346[a][1].

The Court adopts the following stipulated facts as the findings of fact:

1. This action is a civil suit for the refund of $1,803.84 of federal income taxes and interest paid to the defendant.

2. The plaintiffs are Robert R. and Bette B. King who reside at 815 So. 95th Street, Omaha, Nebraska, 68114.

3. The defendant is the United States of America.

4. The plaintiffs, Robert R. and Bette B. King, timely filed their United States Income Tax return for the year 1967.

5. Robert R. King is an employee of the Paxton-Mitchell Company and a participant in that company's profit-sharing plan.

6. The Paxton-Mitchell Company was incorporated in 1901 under the laws of the State of Nebraska, with its principal place of business now being at 27th and Martha Streets, Omaha, Nebraska 68105.

7. The Paxton-Mitchell Company is engaged in the business of manufacturing railway supplies and other iron and steel products.

8. The Paxton-Mitchell Company Profit-Sharing Plan was executed on June 1, 1967, to be effective for the then current fiscal year beginning October 1, 1966. The plan provides that all salaried employees over the age of 21 who have one year of service and normally are employed for more than six months per year shall be eligible to participate. The employer's payments under the plan fully vest immediately in the participants.

9. At the time Paxton-Mitchell Company adopted the Profit-Sharing Plan on June 1, 1967, it then had in existence [and has continued to have in existence at all times pertinent since] a pension plan which in 1967 covered 77 of its employees [20 salaried employees and 57 hourly employees]. Said plan has been ruled by the Internal Revenue Service to be a qualified plan under Section 401, Internal Revenue Code of 1954.

10. The eligible salaried employees who participated in the Paxton-Mitchell Profit-Sharing Plan during the fiscal year 1967; the total compensation which the Company paid each employee; and the contribution the Company made to the Profit-Sharing Plan on behalf of each participating employee are set forth in Appendix A.

11. The job descriptions and responsibilities of the employees who participated in the Paxton-Mitchell Profit-Sharing Plan during 1967 are set forth in Appendix B.

12. During the fiscal year 1967, the Paxton-Mitchell Company employed 148 full time employees. Of these employees, 25 were salaried employees, eligible to participate in the company's profit-sharing plan, and 120 were hourly employees, ineligible to participate in the profit-sharing plan. Also, three full-time salaried employees were ineligible to participate in the plan because they did not satisfy the plan's service requirements. The compensation paid to the aforesaid 120 hourly employees by Paxton-Mitchell during its fiscal year 1967 is set forth in Appendix C.

13. The ownership of the capital stock of the Paxton-Mitchell Company during the fiscal year 1967 is set forth in Appendix D.

14. During the fiscal year 1967, the officers of Paxton-Mitchell Company were as follows:

James L. Paxton, Jr. Chairman of the Board
Robert R. King President
Norman Lund Secretary & Treasurer

15. By letter dated August 24, 1967, the Paxton-Mitchell Company requested a determination letter from the Internal Revenue Service relating to the qualification of the Paxton-Mitchell Profit-Sharing Plan.

16. By letter dated November 14, 1967, the District Director of Internal Revenue for Nebraska informed the Paxton-Mitchell Company that the Paxton-Mitchell Profit-Sharing Plan did not qualify under Section 401 of the Internal Revenue Code of 1954.

17. By letter dated December 14, 1967, the Paxton-Mitchell Company appealed the District Director's adverse determination to the National Office of the Internal Revenue Service.

18. The National Office of the Internal Revenue Service upheld the determination by the District Director of Internal Revenue for Nebraska that the Paxton-Mitchell Profit-Sharing Plan did not qualify under Section 401.

19. In 1967, Robert R. King's allocation from the Paxton-Mitchell Profit-Sharing Plan was $2,647.92.

20. Plaintiffs, Robert R. King and Bette B. King, did not report this sum [$2,647.92] in their taxable income for 1967, alleging that the Paxton-Mitchell Profit-Sharing Plan was qualified under Section 401.

21. Plaintiffs' income tax return was audited and a statutory notice of deficiency [IRS Form L–21A] was issued on November 16, 1971, proposing a deficiency of taxes in the amount of $1,473.-99.

22. A timely assessment of said deficiency of $1,473.99, along with interest of $329.85, was made on January 24, 1972.

23. Full payment in the amount of $1,803.84 was received by the Internal Revenue Service on February 14, 1972.

24. A timely claim for refund in the amount of $1,803.84 was received by the Internal Revenue Service on March 8, 1972.

The parties have stipulated that the issue before the Court is whether the Secretary of the Treasury, or his delegate, correctly held that the profit-sharing plan established by Paxton-Mitchell, which covered only its salaried employees, failed to satisfy the non-discrimination requirements of Section 401[a][3][B] of the Internal Revenue Code of 1954 [26 U.S.C.A. § 401[a][3][B]].

If the determination was correct then the amount allocated to Robert R. King [$2,647.92] through the Profit-Sharing Plan is properly includable in the plaintiff's gross income for the year 1967 and the plaintiffs are not entitled to a refund. If the determination was incorrect then the plaintiffs are entitled to a refund of $1,803.84 plus statutory interest.

An issue that should first be determined is the judicial standard of review that is to be applied to the Commissioner's determination that the Paxton-Mitchell plan is discriminatory. The defendant, United States, asserts that the Commissioner's determination should not be set aside unless it is found to be arbitrary, unreasonable, or an abuse of discretion.

This issue is addressed in Cornell-Young Company v. United States, 469 F.2d 1318 [5th Cir. 1972] which provides in part that:

"Section 401(a)(3) allows to qualify under subparagraph (B) a plan 'set up by the employer *and found by the Secretary or his delegate not to be discriminatory* in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees' [emphasis added]. As noted by Judge Bottle, while the use of the phrase 'found by the' Commissioner, § 401(a)(3)(B), 'does not preclude meaningful judicial review, it does suggest an intention that the Commissioner's finding be given a shade more than its usual substantial weight.' C.I.R. v. Pepsi-Cola Niagara Bottling Corp., 2 Cir. 1968, 399 F.2d 390, 393. Thus, the starting point in analyzing whether the taxpayers here can qualify their plan under subparagraph (B) is recognition that taxpayers have not satisfied the statute on its face—they have not had their plan 'found by the Secretary or his delegate not to be discriminatory'. The ultimate issue is whether we can reverse the Commissioner's affirmative finding that this plan in fact discriminates in favor of the prohibited group.

"The government insists that the standard for review of the Commissioner's decision places the burden on taxpayers to show that the administrative decision was 'arbitrary, unrea-

sonable, or capricious.' Taxpayers argue that 'the only standard of review this court has to follow is one of the applying the law [de novo] to the stipulated facts.' We need not and do not decide if either is a correct statement of the law, for on the facts of this case we find that the Commissioner's finding should not be disturbed, regardless of the standard for review utilized." [Footnotes omitted] [469 F.2d at 1323–1324]

■ This Court has difficulty accepting the government's asserted standard of review because this is not an administrative review proceeding. There are no findings of fact or law of the Commissioner before the Court. The Court cannot determine what was considered or even what record was considered by the Commissioner. This is a suit for a refund pursuant to 28 U.S.C.A. § 1346[a][1] and the Court will apply the traditional standard enunciated in Woodward v. United States, 208 F.2d 893, 897 [8th Cir. 1953] that:

"The Commissioner's ruling . . . [has] the support of a presumption of correctness, and the taxpayer had the burden of proving it to be wrong."

The Court must now determine whether the plaintiffs have fulfilled their burden of proof. Some background discussion is helpful in determining the issues.

The legislative history of § 401 and the meaning of "highly compensated" is discussed by Circuit Judge Friendly in Commissioner of Internal Revenue v. Pepsi-Cola Niagara Bottling Corp., 399 F.2d 390, 392–393 [2nd Cir. 1968] which provides in part that:

"The movement for reform of the deduction for pension, profit-sharing and bonus plans had begun with a message to Congress from President Roosevelt on June 1, 1937. This incorporated a letter from the Secretary of the Treasury stating that the exemption 'has been twisted into a means of tax avoidance by the creation of pension trusts which include as beneficiaries only small groups of officers and directors who are in the high income tax brackets.' 81 Cong. Rec. 5125, 75th Cong., 1st Sess. After investigating and deciding that correction was indeed in order, Congress had to determine in what manner to move from the agreed general purpose to legislation that could be practically applied to the thousands of varying situations with which the Internal Revenue Service would be faced. Congress adopted a two-fold approach. Plans would qualify if a sufficient proportion of the firm's employees were eligible or participated. If, however, a plan's coverage provisions were not so broad as to include the minimum percentage of employees prescribed in § 401(a)(3)(A), they were to be subjected to a more intensive scrutiny by the Treasury Department whose nature the legislature could prescribe only in a more generalized way. Restrictive plans were to qualify only if the Secretary or his delegate were to find that the eligibility requirements were not 'discriminatory' in favor of officers, shareholders, supervisors, or 'highly paid employees.' The legislative history suggests that Congress did not believe itself equipped to give more content to the two phrases we have quoted. The original House Bill sought to define more precisely the characteristics of plans that discriminated in favor of the 'highly paid,' at least with regard to a companion provision, § 401(a)(4), which guarded against the danger that highly paid employees would gain a disproportionate share of pension benefits despite the fact that eligibility requirements were not found discriminatory under § 401[a][3]. It stated that the 'benefits or contributions' required under the plan shall 'not have the effect of discriminating in favor of *any* employee whose compensation is greater than that of *other* employees.' H.R. 7378, § 144(a)(4), 77th Cong., 2d Sess. (1942) (emphasis supplied). A literal reading of this provision would une-

quivocally have made fairness to the lowest paid employee covered by the plan the test of qualification. This formulation, however, was apparently believed to be unduly rigid, for when the tax bill was returned from the Ways and Means Committee to which it had been referred for reconsideration, § 401(a)(4) had been amended to correspond with the more general language of § 401(a)(3)(B), simply banning discrimination in favor of the 'highly paid.'

"The Commissioner found himself confronted with problems in administering the statute similar to those that Congress had encountered in drafting it. While there are attractions in the idea that a plan can be rejected under §§ 401(a)(3) and (4) only if it discriminates in favor of employees who would generally be regarded as 'highly paid,' it poses difficulties of administration which the Tax Court did nothing to resolve. Words like 'high' and 'highly' clamor for a referent. A 500 foot hill would look high in Central Park but not among the Grand Tetons or even at Lake Placid.

. . . . . .

"In order for the plan to meet the coverage requirements, there must be sufficient participation by the lower paid employees to demonstrate that in practice the plan does not discriminate in favor of the high paid employees. * * * The terms 'highly compensated' and 'lower compensated' are relative, and the distinction between them must be based upon the circumstances of each case. Rev.Rul. 56–497, 1956–2 Cum.Bull. 284, 286.

"[3] When Congress has used a general term and has empowered an administrator to define it, the courts must respect his construction if this is within the range of reason."

■ The Court will now look to the factual circumstances of this case. The Paxton-Mitchell Profit-Sharing Plan utilized the classification of "salaried only", and excluded all workers paid on an hourly basis. 26 U.S.C.A. § 401[a][5] provides in part that:

"A classification shall not be considered discriminatory . . . merely because it is limited to salaried . . . employees."

This provision aids the plaintiffs only in the negative sense that the profit-sharing plan is not disqualified because the classification "salaried only" was used.

■ The plaintiffs still have the burden of proving that the Paxton-Mitchell plan does not discriminate within the meaning of 26 U.S.C.A. § 401[a][3][B].

The pertinent statistics with respect to the factor of compensation reflect that the average compensation of all of the participating salaried employees in the Paxton-Mitchell plan is approximately $16,000.00, whereas the average compensation of the excluded hourly paid employee is $6,800.00.

The plaintiffs computed the average compensation of the participating employees approximating $11,500.00 and arrived at this figure by excluding the salaries of the top 4 stockholders, officers and supervisors who were admittedly highly salaried. The category of "highly compensated" is separate and distinct from the other categories. If the plaintiffs' basis for exclusion was that these individuals were also stockholders, officers, or supervisors then the plaintiffs elimination of these salaries from the computation is not justified.

26 U.S.C.A. § 401[a][3][B] provides in pertinent part that the plan should not

"be discriminatory in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, *or highly* compensated employees." [Emphasis supplied]

If a plan were found to be discriminatory in favor of any one of the prohibited categories alone then it could be found to be disqualified. Thus it is im-

proper to exclude individuals from one category simply because these individuals also fall in another category.

If the top four salaries were excluded because the average was disproportionately increased then this might be proper. Further analysis reveals, however, that the participating salaried group is compensated at a significantly higher scale than the excluded wage earner group in several other statistical respects.

The highest salary of the participating group is $58,368.36 whereas the highest wages of the excluded group is $11,179.58. The lowest salary of the participating group is $8,283.31 whereas the lowest wages of the excluded group is $3,721.85.

The profit-sharing plan in Commissioner of Internal Revenue v. Pepsi-Cola Niagara Bottling Corp., *supra*, was held to be discriminatory in favor of highly compensated employees on the basis of less discrimination than existing in the Paxton-Mitchell plan. The median salary of the Pepsi-Cola participating group was approximately $9000.00, and the median wage of the Pepsi-Cola excluded group was less than $6,000.00. The highest salary of the Pepsi-Cola participating group was $30,000.00 and the

highest wage of the Pepsi-Cola excluded group was $7,342.94. The lowest salary of the Pepsi-Cola *participating group* was $2,990.00 and the lowest wage of the Pepsi-Cola excluded group was $3,968.96 [higher than the participating group].

The plaintiffs attempt to distinguish Pepsi-Cola on the basis that a lower number of total employees was included in the Pepsi-Cola covered group. Six or seven employees were included in the Pepsi-Cola covered group. However, only eight employees were in the Pepsi-Cola non-covered group, and there was no disparity in the size of the groups.

In the present case only twenty-five employees are covered by the Paxton-Mitchell Profit-Sharing Plan and One Hundred Twenty employees are not covered by the Paxton-Mitchell Profit-Sharing Plan. If anything the distinction in numbers covered by the Pepsi-Cola plan is a factor against the plaintiffs.

The plaintiffs contend that the Paxton-Mitchell plan "closely fits the mold" of an Internal Revenue Service hypothetical plan published as a guideline. Rev.Rul. 70–200, 1970 Cum.Bull. 101, sets out the hypothetical compensation for each group of fulltime employees as follows:

| Group | Compensation range | Total employees | Excluded employees | Participants | Participants who are officers, shareholders, or supervisors |
|---|---|---|---|---|---|
| 1. | $25,001 to $30,000 ......... | 4 | 0 | 4 | 4 |
| 2. | $20,001 to $25,000 ......... | 0 | 0 | 0 | 0 |
| 3. | $15,001 to $20,000 ......... | 25 | 18 | 7 | 7 |
| 4. | $12,501 to $15,000 ......... | 45 | 37 | 8 | 8 |
| 5. | $10,001 to $12,500 ......... | 50 | 38 | 12 | 3 |
| 6. | $ 7,501 to $10,000 ......... | 14 | 11 | 3 | 0 |
| 7. | $ 5,001 to $ 7,500 ......... | 9 | 4 | 5 | 0 |
| 8. | $ 2,500 to $ 5,000 ......... | 3 | 2 | 1 | 0 |
| | Total ............. | 150 | 110 | 40 | 22 |

It was held that the plan was not discriminatory within the meaning of 26 U.S.C.A. § 401 [a] [3] [B] and the following discussion is pertinent:

"Twenty-two of the 40 plan participants are officer-shareholders, share-

holder-supervisors, or supervisors [persons in whose favor discrimination is prohibited]. However, the compensation of all but 4 of the 40 participants is substantially the same as that of the excluded hourly-paid

employees. Furthermore, the plan in this case covers employees in all compensation ranges; those in the middle and lower brackets are covered in more than nominal numbers: and the classification is not discriminatory in favor of employees in the enumerated groups."

The Paxton-Mitchell plan results in the following breakdown on the same statistical format as used in Rev. Ruling 70–200.

| Group | Compensation Range | Total Employees | Excluded Employees | Participants | Participants Who Are Officers, Stockholders, or Supervisors |
|---|---|---|---|---|---|
| 1. | $25,001 to $55,000 * ........ | 3 | 0 | 3 | 3 |
| 2. | $20,001 to $25,000 ........ | 1 | 0 | 1 | 1 |
| 3. | $15,001 to $20,000 ........ | 2 | 0 | 2 | 2 |
| 4. | $12,501 to $15,000 ........ | 4 | 1 | 3 | 1 |
| 5. | $10,001 to $12,500 ........ | 15 | 4 | 11 | 6 |
| 6. | $ 7,501 to $10,000 ........ | 37 | 32 | 5 | 1 |
| 7. | $ 5,001 to $ 7,500 ........ | 69 | 69 | 0 | 0 |
| 8. | $ 2,500 to $ 5,000 ........ | 14 | 14 | 0 | 0 |
| | Total ................ | 145 | 120 | 25 | 14 |

* The Paxton-Mitchell format necessarily has a higher ceiling than the hypothetical plan because two of the Paxton-Mitchell employees received salaries in excess of $50,000.00, whereas no employee in the hypothetical plan received a salary in excess of $30,000.00.

The Court notes initially that the Paxton-Mitchell plan is not impermissibly discriminatory with respect to the categories of officers, shareholders, or supervisors, even if these categories are considered cumulatively.

While the total number of participants in the Paxton-Mitchell plan is lower than the hypothetical approved plan, the ratio of officers, shareholders and supervisors, to the total number of participants, is approximately the same.

The Court has excluded from consideration, as supervisors, those individuals classified as Superintendents because their duties were administrative in nature and did not include the principal duty of supervising the work of other employees.

Thus the sole issue in the case of the Paxton-Mitchell plan is whether the discrimination is to an impermissible degree in favor of "highly compensated employees".

Clearly the Paxton-Mitchell plan is significantly higher in discrimination with respect to compensation than the hypothetical plan.

Unlike the hypothetical plan the Paxton-Mitchell plan is top heavy. Two Paxton-Mitchell employees are compensated at some $20,000.00 in excess of the highest salary in the hypothetical plan, and the compensation of the Paxton-Mitchell participating group is obviously significantly higher than the excluded Paxton-Mitchell hourly-paid employees. Only five of the Paxton-Mitchell participating group received a salary of less than $10,000.00. Twenty employees or 80% of the participating Paxton-Mitchell participating salaried employees earn in excess of $10,000. By contrast One Hundred Fifteen of the One Hundred Twenty Paxton-Mitchell employees, or over 95% of the hourly-paid excluded group earn less than $10,000.00, and over 85% of the Paxton-Mitchell hourly paid excluded group earn *less* than the *lowest* paid Paxton-Mitchell individual of the salary paid participating group. Thus there is a marked failure in the Paxton-Mitchell plan to cover employees in the middle and lower compensation ranges, whereas there was approximately equal coverage in these ranges of the hypothetical plan.

During oral arguments counsel for the plaintiffs asserted that the Paxton-Mitchell plan should not be considered discriminatory because it is equitable to limit profit-sharing to those individuals who shoulder heavy responsibilities of the company in addition to working long hours, and that it is an economic fact of life that foundry workers are compensated at lower wages than the so-called white collar workers in the same organization and that the difference is greater than in other business such as merchandising companies or professional organizations.

The plaintiffs' assertions are appealing in the equitable sense and the business sense and this Court would give strong consideration to these assertions if it were proper to do so.

These considerations are not, however, for this Court, short of total arbitrariness and this is made clear by Bernard McMenamy Contractor, Inc. v. Commissioner of Internal Revenue, 442 F.2d 359 [8th Cir. 1971] which provides in part that:

"Taxpayer asserts that it is not only natural, but fair, to afford larger benefits to those longer in service, and that when a plan is initiated and in effect being funded, and the senior employees may be nearer retirement, it is fair to make larger contributions on their account. This may or may not be true, having in mind that during the pre-plan years these employees received what, presumably, would have been paid into the plan on their behalf had it been in effect, and are now receiving it a second time. But if it be fair, it is nonetheless irrelevant. The question is the extent to which Congress was willing to afford a present income tax deduction to the employer. Even if it is reasonable to weigh a plan in terms of past service, it is nevertheless not improper for Congress to exclude any plan which discriminates economically in favor of a special class. Cf. Commissioner of Internal Revenue v. Pepsi-Cola Niagara Bottling Corp., 2 Cir., 1968, 399 F.2d 390. The fact that a taxpayer may advance a good reason for its plan is not the point. Deductions are a matter of grace, and short of total arbitrariness it is for Congress to weigh the reasons."

The Court concludes that it is virtually compelled to reach the same result as the Commissioner under the facts and circumstances of the Paxton-Mitchell plan, even without a presumption of correctness.

The Court concludes that the plaintiff has failed to prove by a preponderance of the evidence that the Paxton-Mitchell profit-sharing plan does not impermissibly discriminate in favor of employees who are highly compensated employees. A Separate Order consistent with this Memorandum will be entered.

### APPENDIX "A"

The eligible salaried employees who participated in the Paxton-Mitchell Profit-Sharing Plan during the fiscal year 1967; the contribution the company made to the Profit-Sharing Plan on behalf of each participating employee, and the total compensation the company paid each employee.

| NAME | COMPANY CONTRIBUTION | TOTAL COMPENSATION |
|---|---|---|
| Willard Ballou | $ 518.41 | $10,210.59 |
| Merle Becker | 630.15 | 12,444.85 |
| Frank Brewster | 442.07 | 8,797.93 |
| Robert Breitinger | 569.17 | 11,298.53 |
| Calvin Burbeck | 548.90 | 10,876.10 |
| John Cutkosky | 498.15 | 9,876.85 |
| Don Davis | 650.62 | 12,828.67 |
| Adolph Gebhardt | 650.62 | 12,809.38 |
| Charles Hadden | 416.69 | 8,283.31 |
| Harold Hansen | 569.17 | 11,290.83 |
| Vernon Holmes | 533.55 | 10,566.45 |
| Robert Johnson | 782.63 | 15,417.21 |
| Robert King | 2,647.92 | 52,116.07 |
| Larry Lacina | 452.30 | 8,900.00 |
| Norman Lund | 1,377.38 | 27,101.59 |
| Veston Mallory | 579.40 | 11,480.60 |
| Lawrence Miller | 538.67 | 10,611.33 |
| Ivan Mitchell | 543.79 | 10,737.82 |
| James Paxton | 2,962.89 | 58,368.36 |
| Christian Petersen | 1,234.93 | 24,314.99 |
| John Pistillo | 615.01 | 12,189.99 |
| Robert Rodenburg | 990.97 | 19,569.03 |
| Arthur Sholl | 726.76 | 14,373.24 |
| Frank White | 467.65 | 9,236.35 |
| Richard Zarek | 518.41 | 10,221.59 |
| TOTALS | $20,466.21 | $403,921.66 |

Three salaried employees of Paxton-Mitchell who were not participants in

the Profit-Sharing Plan in 1967 because they did not then meet the service requirement and their 1967 fiscal year compensations were as follows:

| Employee | Compensation |
|---|---|
| J. Klossmeyer | $10,237.50 |
| C. Muller | 8,025.00 |
| R. Seidler | 10,200.00 |

### APPENDIX "B"

The job descriptions and responsibilities of the employees who participated in the Paxton-Mitchell Profit-Sharing Plan during 1967.

*W. Ballou*, Squeezer Department Foreman Supervises the activities of one section of the molding operations.

*M. Becker*, Iron Foundry Superintendent Directs the activities of the Iron Foundry, supervising all operations.

*F. Brewster*, Assistant to the Vice President—Marketing Handles correspondence relating to customers. Handles customer contact by phone.

*R. Breitinger*, Manager of Industrial Engineering. Has responsibility for the settings and maintaining of incentive standards and assists customers and the Sales Department in the engineering and design of castings. Works in an advisory capacity on technical problems.

*C. Burbeck*, Mechanical Engineer. Works in design of new products.

*J. Cutkosky*, Electrical Engineer. Works in design of electrical products.

*D. Davis*, Equipment Sales Manager—Eastern Division. Works as a sales and service engineer, contacting customers in the eastern half of the United States.

*A. Gebhardt*, Superintendent Jebco Division. Supervises the activities of the Jebco Division plant in Blair.

*C. Hadden*, Manager Quality Control. Is responsible for inspection procedures, inspection records, prepares material certification for customers, performs layout of castings, checks customer returns, and generally oversees the quality of production.

*V. Holmes*, Manager Industrial Sales. Operates as salesman, primarily for foundry products, and covers territory generally within 600 mile radius of Omaha.

*R. Johnson*, Director of Personnel and Assistant to the President. Operates as Personnel Manager, maintaining records of personnel. Maintains group insurance and pension plan records and information.

*R. King*, President. Operates as chief executive of Paxton-Mitchell Company.

*L. Lacina*, Industrial Engineer. Prepares cost cards, maintains files, audits time cards and earnings slips. Reviews current jobs for comparison of standards and actuals.

*N. Lund*, Secretary-Treasurer. Supervises all accounting and purchasing operations.

*V. Mallory*, Purchasing Agent. Purchases all supplies and materials used in the plant.

*L. Miller*, Cleaning Room Foreman. Supervises the activities of the Iron Foundry cleaning room, shipping and receiving departments.

*I. Mitchell*, Equipment Sales Manager—Western Division. Operates as a sales and service engineer for the western half of the United States.

*J. Paxton*, Chairman of the Board.

*C. Petersen*, Vice President—Marketing. Supervises all activities of the Sales Department.

*J. Pistillo*, Superintendent of Machine Shop. Supervises the operations of the Machine Shop at 21st and Pacific Streets.

*R. Rodenburg*, Vice President—Manufacturing. Has over-all responsibility for all manufacturing operations.

*A. Sholl*, Director of Engineering. Responsible for . product engineering throughout the plant and development of new products.

*F. White*, Slinger Department Foreman. Supervises the activities of the slinger molding operation.

**1322**

*D. Zarek,* Manager Production Control. Schedules all orders and follows up to see that the proper flow of production is being maintained. Makes production reports and breakdown of time and rates on timecards. Maintains work load records. Performs liaison work between production departments, industrial engineers, and sales.

APPENDIX "C"

The compensation paid to the 120 hourly employees who were ineligible to participate in the Profit-Sharing Plan, and a summary of said compensation.

| NAME | ANNUAL WAGES |
|------|-------------|
| R. Seibel | $5,593.38 |
| M. Harris | 4,824.17 |
| K. Smith | 4,062.31 |
| R. Armstrong, Sr. | 5,808.21 |
| R. J. Popish | 9,277.14 |
| P. Dunbar | 6,195.24 |
| S. Norris | 4,454.43 |
| A. Ziccardi | 5,625.15 |
| D. Riley | 4,894.57 |
| L. Armstrong | 5,635.67 |
| J. Edwards | 3,721.85 |
| R. Johnson | 7,781.15 |
| W. Salmen | 7,881.29 |
| A. Benitez | 7,218.96 |
| A. Crone | 6,327.92 |
| P. Wood | 8,161.31 |
| E. Leach | 6,774.60 |
| H. Drummond | 6,983.77 |
| G. Stork | 6,507.20 |
| W. Baumeister | 5,073.95 |
| W. Davis | 8,224.89 |
| D. Buenting | 8,155.02 |
| C. Walker | 7,122.72 |
| P. Netzel | 7,144.81 |
| J. Bednarz | 7,340.34 |
| T. Thompson | 7,822.77 |
| E. Misiumas | 8,674.60 |
| P. Norris | 6,128.09 |
| J. Wilson | 8,403.31 |
| J. Cich | 7,556.95 |
| A. Hynek | 5,214.66 |
| V. Moss | 8,882.64 |
| T. Blan | 8,807.58 |
| V. Zaracki, Jr. | 7,570.93 |
| J. Wilson | 7,160.15 |
| J. Cozad | 6,053.19 |
| H. Figgins | 7,683.10 |
| R. Moore | 8,183.69 |
| W. Ross | 6,264.83 |
| R. Ewing | 7,328.69 |
| C. Mostek | 7,225.92 |
| T. Popish | 8,316.81 |
| A. Ellis | 7,858.94 |
| L. Jensen | 8,239.34 |
| O. Dethlefs | 7,510.40 |
| J. Plunkett | 6,102.68 |
| B. Cotton | 6,426.90 |
| J. Cosin | 5,742.05 |
| W. Stevens | 6,370.44 |

| NAME | ANNUAL WAGES |
|------|-------------|
| J. Allen | 5,338.32 |
| J. Johnson | 4,769.92 |
| E. Zagurski | 5,826.26 |
| S. Gamble | 5,404.77 |
| D. Wattjes | 7,471.27 |
| C. Depue | 5,402.61 |
| A. Johnson | 6,033.26 |
| B. Matthews | 6,582.88 |
| A. Dein | 7,541.84 |
| E. Seibel | 6,846.43 |
| C. Muller | 8,025.00 |
| C. Rasmussen | 5,144.92 |
| C. Podany | 5,880.12 |
| R. Walton | 1,880.93 |
| J. Gubbels | 3,232.90 |
| L. Paczosa | 6,234.72 |
| B. Lannin | 5,678.21 |
| D. Bart | 4,076.45 |
| E. Ourada | 4,023.35 |
| D. Applegate | 5,528.60 |
| R. Lenhart | 6,589.05 |
| D. Vlcek | 7,184.56 |
| R. Hansen | 11,179.58 |
| T. Coy | 8,533.96 |
| L. Benis | 7,899.31 |
| G. Redding | 4,948.30 |
| A. Combs | 4,210.27 |
| E. Fields | 10,044.28 |
| J. Johnson | 8,813.08 |
| D. Jansa | 7,378.17 |
| E. Graybill | 6,735.84 |
| C. Coleman | 6,499.40 |
| L. Johnson | 6,113.00 |
| R. Kolar | 12,536.62 |
| H. Poppner | 7,510.16 |
| R. DeBusk | 7,106.54 |
| R. D. Popish | 8,326.39 |
| T. Ziccardi | 8,085.80 |
| C. Carnevalo | 10,340.58 |
| C. Treska | 6,616.31 |
| R. Penney | 6,630.65 |
| F. Bovanski | 6,026.32 |
| L. Asbach | 8,101.10 |
| R. Sage | 10,833.03 |
| M. Homolka | 8,672.85 |
| W. Kleiffman | 7,534.16 |
| J. Ziccardi | 6,484.99 |
| W. Trusler | 5,627.89 |
| H. Colbert | 5,612.56 |
| T. Robb | 6,900.39 |
| V. Terasinski | 5,131.05 |
| M. Jarosik | 6,283.34 |
| B. Jarosik | 7,930.48 |
| C. Hanna | 6,656.03 |
| E. Kluza | 6,317.75 |
| M. Gloeb | 6,890.23 |
| L. Harper | 6,344.76 |
| J. Elsasser | 6,562.89 |
| D. Story | 7,179.42 |
| D. Story | 6,303.97 |
| A. Homolka | 7,477.77 |
| N. Barry | 4,550.90 |
| R. Bringleson | 6,409.02 |
| R. Marvin | 4,119.44 |
| L. Farrel | 6,209.12 |
| J. Frederiksen | 6,861.02 |
| E. Powell | 5,102.31 |
| L. Rhoades | 8,553.19 |
| O. Pinkard | 6,879.25 |
| O. Benson | 7,097.24 |
| L. Gater, Sr. | 6,281.73 |

A summary of the compensation paid to the 120 hourly employees [who were in- eligible to participate in the Profit-Sharing Plan]:

| Compensation | NO. of Employees |
|---|---|
| Under $ 3,000 | 0 |
| $ 3,000 to $ 4,000 | 1 |
| $ 4,000 to $ 5,000 | 12 |
| $ 5,000 to $ 6,000 | 21 |
| $ 6,000 to $ 7,000 | 36 |
| $ 7,000 to $ 8,000 | 27 |
| $ 8,000 to $ 9,000 | 17 |
| $ 9,000 to $10,000 | 1 |
| $10,000 to $11,000 | 3 |
| $11,000 to $12,000 | 1 |
| $12,000 to $13,000 | 1 |
| over $13,000 | 0 |
| Total | 120 |

## APPENDIX "D"

The ownership of the capital stock of the Paxton-Mitchell Company during the fiscal year 1967:

| NAME | ADDRESS | NUMBER OF SHARES |
|---|---|---|
| Orville A. Dethlefs | 3848 Seward | 4 |
| Adolph Gebhardt | 5704 N. 52nd St. | 50 |
| Vernon J. Holmes | 3055 S. 34th St. | 13 |
| Robert C. Johnson | 112 S. 53rd St. | 6 |
| Bette B. King | 815 S. 95th St. | 10 |
| Robert R. King | 815 S. 95th St. | 712½ |
| Norman L. Lund | 1229 St. Andrews Rd. Bellevue | 20 |
| Ivan L. Mitchell | 4830 Krug Ave. | 1 |
| Joseph M. Munsinger | Malvern, Iowa | 43½ |
| Alice A. Paxton | 3623 Jackson | 40 |
| Mrs. Elizabeth A. Paxton | 105 N. 55th St. | 68 |
| James L. Paxton, Jr. | 3623 Jackson St. | 1,999¾ |
| W. A. Paxton Trust #1 [James L. Paxton Jr. Trustee] | 3623 Jackson St. | 225 |
| W. A. Paxton Trust #2 [James L. Paxton Jr. Trustee] | 3623 Jackson St. | 225 |
| Miss Elizabeth K. Paxton [James L. Paxton, Jr. Tr.] | 2614 Martha St. | 520¼ |
| Christian H. Petersen | 13612 Walnut St. | 26 |
| Frank White | 9919 Bedford Ave. | 2 |
| Charles B. Williams | 6211 Belvedere Blvd. | 34 |
| TOTAL | | 4,000 |